UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ED L. HAGEN, | ) | No. CV-11-5118-CI |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 19, 27. Attorney David L. Lybbert represents Ed Hagen (Plaintiff); Special Assistant United States Attorney M. Thayne Warner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On December 19, 2006, Plaintiff protectively filed an

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

application for both supplemental security income and for disability insurance benefits, alleging disability beginning March 25, 2003. Tr. 8; 190. Plaintiff filed twice before for Title II and Title XVI benefits, once in February 2004, and once in July 2005. Tr. 8; 190-91. In both applications, the Plaintiff alleged the same onset date of disability as in the present applications. Tr. 8. The previous applications were denied on June 24, 2004, and August 26, 2005, respectively. Tr. 8; 190-91. The ALJ indicated that he reviewed all the medical records, but because Plaintiff did not appeal his earlier denials, he concluded that a final determination of non-disability was made through August 26, 2005. As a result, the ALJ discussed evidence post-dating August 26, 2005, as justification for the opinion. Tr. 8.

In his application for benefits, Plaintiff reported that he stopped working because the chronic pain was too much, and he was unable to sit or stand for a long time. Tr. 169. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 8; 97-111. A hearing was held on August 18, 2009, at which Vocational Expert Anne F. Aastum, medical expert James M. Haynes, M.D., and Plaintiff, who was represented by counsel, testified. Tr. 29-96. ALJ Gene Duncan presided. Tr. 29. The ALJ denied benefits on November 13, 2009. Tr. 8-21. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 45 years old, living with one other person in

a one-bedroom apartment in Pasco, Washington.  Tr. 32; 54; 189.
Plaintiff attended school through the tenth grade, and later
obtained a GED.  Tr. 32.  In 2003, Plaintiff injured his back
lifting a 50-pound bag of salt at work.  Tr. 303-04.  Plaintiff
testified that now he has to be very careful how he moves, and a
couple of times per week he "throws out" his back and is bedridden
for a few days.  Tr. 34.  Plaintiff estimated his back pain, on a
level of one to ten, is constant at a seven, but often flares up to
nine to eleven.  Tr. 48.

Plaintiff testified that during the day, he takes care of his
15 year old son, and otherwise is a "couch potato."  Tr. 51.  He
also testified that he has to change positions every couple of
minutes, and he cannot sit for more than fifteen minutes at a time.
Tr. 52-53.  He attends church and reads.  Tr. 54.  Plaintiff
testified he cannot work because he is in such pain that he cannot
"focus on anything but the pain.  All the meds [sic] I'm taking make
me dizzy, sleepy, or both."  Tr. 56.  Plaintiff smokes one and one-
half packs of cigarettes per day.  Tr. 32.

Plaintiff's past work includes sales route driver, merchandise
deliverer, manager fast food services, and he was trained for one
month as a surveillance systems monitor.  Tr. 70.

### ADMINISTRATIVE DECISION

At step one, ALJ Duncan found Plaintiff had not engaged in
substantial gainful activity since March 25, 2003, the alleged onset
date.  Tr. 10.  At step two, he found Plaintiff had the following
severe impairments: Degenerative Disc Disease; Lumbar Radiculopathy
Status-post Back Injury; and Obesity.  Tr. 11.  At step three, the
ALJ determined Plaintiff's impairments, alone and in combination,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).    Tr. 11.    The ALJ found Plaintiff  has the Residual Functional Capacity ("RFC") to perform sedentary work with the following limitations:

> [H]e can occasionally (10% of the workday) climb, kneel, stoop, balance, crouch, and crawl; he should not be exposed to heights, dangerous machinery, or vibrating equipment; he is limited to only superficial public contacts and should not be involved in intense interactions with others; he should have a sit/stand option allowing him to move about his job station for one to three minutes every hour; he can walk no more than one block on uneven terrain; he can pull objects weighing ten pounds or less; he should not have direct access to drugs or alcohol; he can occasionally bend from the waist; and he should not torque or twist his upper body.

Tr. 13.

In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings.    Tr. 13.    The ALJ found that Plaintiff was able to perform past relevant work as a surveillance systems monitor.    Tr. 18.    Alternatively, the ALJ found after considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as addressor, final assembler, pin and clip fastener, document preparer, and cutter and paster.    Tr. 20.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).    The decision of the

Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ISSUES

Plaintiff first asks the court to reopen the prior denial of the Title II case he filed in 2004 and the Title XVI claim he filed in 2005.  ECF No. 20 at 8.  Plaintiff also argues that the ALJ erred by: (1) finding Plaintiff did not meet Listing 1.04; (2) finding Plaintiff had little credibility; and (3) failing to obtain an opinion from a vocational expert that reflected all Plaintiff's functional limitations.  ECF No. 20 at 9.

## ANALYSIS

### A.   Reopening Plaintiff's prior claims

The ALJ noted that while he reviewed all the evidence submitted, including the records relating to Plaintiff's condition prior to August 27, 2005, he recognized a final determination of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

non-disability had been made through August 26, 2005, and, thus, he would consider the evidence from August 27, 2005, forward in determining the instant case. Tr. 8. Plaintiff requests the court "consider reopening the prior denials of 2004, as to the Title II claim, and the 2005 denial under the Title XVI claim." ECF No. 20 at 8.

The regulations state that the ALJ may dismiss a hearing request or refuse to consider one or more issues on the grounds of *res judicata*. 20 C.F.R. § 416.1457(c)(1). The doctrine of *res judicata* applies when a previous determination has been made regarding one's rights on the same facts and same issue or issues, and this previous determination or decision has become final by either administrative or judicial action. 20 C.F.R. § 404.957(c)(1).

An ALJ's decision to not reopen a case is a discretionary decision. The court may apply *res judicata* to bar reconsideration of a period for which a determination has already been made, by declining to reopen a prior application. *Lester v. Chater, 81 F*.3d. 821, 827 (9th Cir. 1995), citing *Krumpleman v. Heckler,* 767 F.2d 586. 588 (9th Cir. 1985), *cert denied,* 475. U.S. 1025 (1986). As a general matter, the ALJ's refusal to reopen a decision as to an earlier period is not subject to judicial review. *Id.* A district court has no jurisdiction to review the ALJ's discretionary denial of a request to reopen a prior final determination absent a colorable constitutional claim. Plaintiff's 2004 claim was denied on June 24, 2004, his 2005 claim was denied on August 26, 2006, and he did not file an appeal after notice of his rights in either case. Tr. 8; 14. No constitutional claim has been raised and, therefore,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

the ALJ's decision not to reopen the 2004 and 2005 cases are not subject to review.  Tr. 8.

**B.   Credibility**

Plaintiff contends that the ALJ erred by finding Plaintiff not credible solely because the objective medical evidence did not corroborate his alleged severity of pain.  ECF No. 20 at 19.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by "specific," "cogent" reasons. *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). See also *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick,* 157 F.3d at 722.

The reasons the ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).  If substantial evidence exists in the record to support the ALJ's credibility finding, the court will not engage in

second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett,* 180 F.3d at 1098.

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59. Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. See SSR 96-7p.

In this case, the ALJ used objective medical evidence in the record as one factor in his credibility determination. Tr. 14. He also relied on the factors set forth in Social Security Ruling 88-13, and *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). These factors include, *inter alia*, physicians' observations, lack of adequate explanation for not seeking medical attention, Plaintiff's lack of effort during exams and physicians' observations that Plaintiff embellished his symptoms, and other aggravating factors. *Smolen*, 80 F.3d at 1284. The ALJ took all of the above into consideration, showing he did not base his credibility determination entirely on the objective medical evidence. Tr. 13-17; 297; 341; 414; 447; 453-54; 489-95.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1    Moreover, the objective medical studies cited by Plaintiff that
2  he claimed established nerve damage, were contradicted by additional
3  objective medical evidence that was cited and relied upon by the
4  ALJ.   ECF No. 20 at 20; Tr. 14-15.   As a result, substantial
5  evidence supported the ALJ's ruling related to Plaintiff's lack of
6  credibility.

7  **C.   Listing 1.04**

8    Plaintiff claims that he qualifies for Listing 1.04:

9    Disorders of the spine (e.g., herniated nucleus pulposus,
     spinal arachnoiditis, spinal stenosis, osteoarthritis,
10   degenerative disc disease, facet arthritis, vertebral
     fracture), resulting in compromise of a nerve root
11   (including the cauda equina) or the spinal cord.  With .
     . .
12   C. Lumbar spinal stenosis resulting in pseudoclaudication,
     established by findings on appropriate medically
13   acceptable imaging, manifested by chronic nonradicular
     pain and weakness, and resulting in inability to ambulate
14   effectively, as defined in 1.00B2b.

15  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.   The listing requires
16  the establishment of a disorder with a co-occurring loss of
17  function.   "For a claimant to show that his impairment matches a
18  listing, it must meet all of the specified medical criteria.   An
19  impairment that manifests only some of those criteria, no matter how
20  severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530,
21  110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).   Diagnosis of the disorder
22  must be supported by findings from medically acceptable imaging
23  procedures (such as x-ray or MRI) and abnormal findings should be
24  confirmed by alternative testing methods. 20 C.F.R. Pt. 404, Subpt.
25  P, App. 1, § 1.00(C)-(D).

26    Loss of function is defined by the Listings as the inability to
27  ambulate effectively or the inability to perform fine and gross
28  motor movements effectively.   20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 1.00(B)(2)(a).   "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1).  Effective ambulation is characterized by the ability to carry out activities of daily living and to travel without the assistance of a companion, while examples of ineffective ambulation include the inability to walk without two crutches or canes and the inability to shop or climb steps.  *Id.*

Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet the requirements of Listing 1.04. Listing 1.04(A) requires evidence of nerve root compression, which much of the medical evidence suggests that Plaintiff lacked. On April 4, 2003, Craig M. Feeney, M.D., opined Plaintiff's MRI results indicated in part, "[n]arrowing of the thecal sac at L4-5, probable LS nerve root encroachment."  Tr. 436.  However, as the ALJ noted, that finding was later contradicted by both orthopedic surgeon Joseph S. Sacamano, M.D., and neurosurgeon Thomas Dietrich, M.D., who jointly opined "[w]e note that there is indeed some bulging of the intervertebral disc between L4 and L5.  We do not find distinct neural impact from such bulging."  Tr. 340.  Reviewing physician James Haynes, M.D., testified at the hearing that while Plaintiff had arthritis of the lumbar spine, he could not see nerve root contact or effect, and Plaintiff did not meet or equal Listing 1.04.  Tr. 36-37.  Additionally, the record supports the ALJ's finding that Plaintiff was observed on multiple occasions to have a normal gait, and on the occasion he appeared to limp, he could still

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

heal and toe walk and had an appropriate tandem gait.  Tr. 12; 277;
307; 318; 336; 403.

Additionally, even if Plaintiff had established nerve root
impingement, substantial evidence is lacking that he meets the
functional limitations required by Listing 1.04.  The record does
not contain evidence that support Plaintiff's claim that he needs to
use a cane to ambulate.  Section 1.00B2b defines the "inability to
ambulate effectively" as the inability to ambulate "without the use
of hand-held assistive device(s) that limits the functioning of both
upper extremities," such as "a walker, two crutches or two canes."
20 C.F.R. Part 404, Subpart P, App. 1, § 1.00B2b.  Plaintiff does
not assert — nor is there any evidence in the record to support such
an assertion — that to ambulate, he requires two canes, or any other
assistive device that limits the functioning of both upper
extremities. Thus, Plaintiff has not shown that he meets Listing
1.04.

**D.  Vocational Expert Testimony and Past Relevant Work**

Plaintiff contends that the testimony the VE provided lacked
evidentiary value because it was not based upon all the limitations
the ALJ assessed for Plaintiff.  ECF No. 20 at 10-11.  Instead,
Plaintiff argues, the hypothetical posed to the VE reflected a
claimant who could perform light exertion work, instead of sedentary
work.  ECF No. 20 at 11.  Additionally, Plaintiff argues that he
received only one month of "training" in surveillance monitoring
that did not qualify as past relevant work.  ECF No. 20 at 13.

**1.  Vocational Expert Testimony**

The ALJ concluded that Plaintiff can perform sedentary work,
with additional restrictions.  Tr. 13.  Sedentary work involves

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

lifting no more than 10 pounds at a time and standing or walking no more than about 2 hours of an 8-hour workday.  SSR 83-10.  Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. SSR 83-10.  The full range of light work requires standing or walking, off and on, for a total of about 6 hours of an 8-hour workday. SSR 83-10.

The Plaintiff is correct that the ALJ's hypothetical posed to the Vocational Expert reflected light, instead of sedentary, exertional capabilities related to lifting:

> Assume that the claimant retains a residual functional capacity for detailed work, with the following additional limitations: occasionally lift 20 pounds, frequently lift 10 pounds; can sit for six hours of an eight-hour day; can stand or walk for two hours of an eight-hour day; occasionally climb, kneel, stoop, balance, crouch, crawl, occasionally equal 10 percent in this case, 10 percent of the workday; should not be exposed to heights, dangerous machinery, vibrating equipment; can have only superficial public contact; should have a sit/stand option, in particular, allowing one to three minutes to move about at his job station every hour; can only walk for one block on uneven terrain; can pull objects weighing 10 pounds or less.

Tr. 72.

The ALJ also added the limitations of no access to drugs or alcohol; occasional bending from the waist; no torquing or twisting of the upper body; and no intense interaction with others.  Tr. 79.

The Plaintiff argues that the case lacks testimony from the VE that supports the ALJ's ultimate conclusion Plaintiff can return to work.  ECF No. 20 at 11-12.  In the opinion, the ALJ acknowledged the hypothetical posed to the VE reflected light work exertion, but reasoned that because the DOT defined surveillance systems monitor as sedentary, and because Plaintiff testified that he could move

about that work station as much as necessary, the ALJ concluded Plaintiff could perform his previous work.[2]  Tr. 19.

At step four, Plaintiff bears the burden of proving that he cannot perform past relevant work.  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  "A claimant establishes a prima facie case of disability by showing that his impairments prevent him from doing his previous job." *DeLorme v. Sullivan*, 924 F.2d 841, 849-50 (9th Cir. 1991).  If the claimant fails to do so, the burden never shifts to the Commissioner, and no vocational expert testimony is necessary.  *Matthews*, 10 F.3d at 681.  Although the Plaintiff bears the burden of proof at step four, the ALJ is still required to make the requisite factual findings to support his conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ must compare a Plaintiff's residual functional capacity to the physical and mental demands of the Plaintiff's past work.   20 C.F.R. §

---

[2]

> [T]he hypothetical individual posed to the vocational expert initially referred to an individual that was able to perform a light level of exertion.  The vocational expert testified that such an individual would be able to perform the claimant's past relevant work as a surveillance systems monitor as defined by the DOT.  The undersigned did not question the vocational expert whether an individual capable of only sedentary exertion would be able to perform the claimant's past relevant work, but the DOT defines the occupation of Surveillance Systems Monitor as sedentary.  The only difference between the undersigned's hypothetical individuals was their exertional level.  All other limitations remained the same.  The clamant also testified that, while working in his surveillance job, he was able to move about his work station much more than his assessed residual functional capacity required.  Thus, the undersigned finds that the claimant is able to perform his past relevant work as a surveillance systems monitor both as he actually performed it and as generally performed in the national economy.

Tr. 19.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

416.920(f); *Pinto*, 249 F.3d at 844-45.  If the Plaintiff can still perform his prior work, he is not disabled. *Id*.  Plaintiff's testimony may be used to define a claimant's past relevant work as actually performed. *Id*.  If a claimant can perform light work, then it is determined the claimant can also perform sedentary work, unless additional limiting factors exist, such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

In this case, the ALJ compared Plaintiff's RFC with the physical and mental demands of surveillance monitor and concluded Plaintiff was able to perform the work as actually and generally performed.  Tr. 19. The ALJ's initial hypothetical to the Vocational Expert misstated Plaintiff's exertional abilities related to the amount of weight he could lift.  That portion of the hypothetical reflected the ability to perform light work, when the ALJ found Plaintiff could perform only sedentary work.  Because the ALJ ultimately concluded Plaintiff could perform his past relevant work of surveillance monitor, classified as sedentary work that did not require lifting that exceeded Plaintiff's abilities, the error in the hypothetical was irrelevant.  The ALJ did not err by relying upon the VE's testimony that Plaintiff could perform his past relevant work.

**2.   Past Relevant Work**

Plaintiff also argues that his single month of training for surveillance system monitor work did not constitute regular employment that was sufficient or equivalent to work.  ECF No. 20 at 13.  Past relevant experience is defined as "work . . . done within the past 15 years, that was substantial gainful activity, and that

lasted long enough . . . to learn how to do it." 20 C.F.R. §
404.1560(b)(1).   A finding of past relevant experience is
significant since that finding combined with a residual functional
capacity assessment allows an ALJ to stop at step four of the
five-step sequential evaluation of disability and not consider other
factors required in step five.   See 20 C.F.R. § 416.920(a)(4).

Plaintiff testified that he was hurt on the job in March 2003.
Tr. 33.   He said he received workers' compensation benefits for
about a year, and then he settled the case.   Tr. 33.   Plaintiff
testified that he was trained to monitor a surveillance system for
30 days, and it was "considered a training exercise."   Tr. 75.   He
testified that he was paid hourly, and he thought the wage was sent
to L&I, and he received "the regular check."   Tr. 75.

As the ALJ noted, Plaintiff stated in his Work History Report
that he was trained in surveillance from October 1, 2004 to October
31, 2004.   Tr. 18; 212.   The surveillance system monitor job is
classified as level 2 Specific Vocational Preparation ("SVP"), which
is unskilled.   See DOT 379.367-010; 20 C.F.R. § 404.1568(a); Tr.
73.   Under the Social Security regulations, "unskilled work" is
defined as work that requires "little or no judgment" in performing
"simple" duties that can be learned "on the job" and "in a short
period of time."   A job with a level 2 SVP requires training time
required to learn the job of up to one month. 20 C.F.R. §§ 404.1568
(a),[3] 416.968(a) (2008).   Because Plaintiff was trained for one month

---

[3]

(a)   Unskilled work is work which needs little or no
judgment to do simple duties that can be learned on the
job in a short period of time. The job may or may not
require considerable strength. For example, we consider

as a surveillance systems monitor, he is deemed to have been on the job long enough to learn how to do it; Plaintiff's month of training qualifies as past relevant work.

Finally, to qualify as past relevant work, Plaintiff's earnings must exceed the presumptive amount for monthly earnings in 2004. In evaluating whether a claimant's work is substantial and gainful, the ALJ's primary consideration will be the earnings the claimant derives from the work activity. 20 C.F.R. § 404.1574(a)(1); see also SSR 83-33 ("[E]arnings provide an objective and feasible measurement of work.") When a claimant earns more than the primary amount set forth in the earning guidelines contained in SSR 83-33, a rebuttable presumption arises that the claimant was engaged in substantial gainful activity. In 2004, Plaintiff's reported earnings for the single month was $1,447, from the Crazy Moose Casino in Auburn, Washington. Tr. 157; 161. The presumptive monthly amount for 2004 was $810.00 per month. Tr. 19; 20 C.F.R. § 404.1574; SSR 83-33. Because Plaintiff earned more than the presumptive monthly amount, his work as a surveillance systems monitor qualifies as past relevant work, and the ALJ did not err in this determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court

---

jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568 (a).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1  concludes the ALJ's decision is supported by substantial evidence
2  and is not based on legal error.   Accordingly,
3      **IT IS ORDERED:**
4      1.   Defendant's Motion for Summary Judgment, **ECF No. 27,** is
5  **GRANTED.**
6      2.   Plaintiff's Motion for Summary Judgment, **ECF No. 19,** is
7  **DENIED.**
8      The District Court Executive is directed to file this Order and
9  provide a copy to counsel for Plaintiff and Defendant. Judgment
10 shall be entered for **DEFENDANT** and the file shall be **CLOSED.**
11     DATED April 11, 2013.
12
13                    S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 18